UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AFZALUL ALAM,

    Plaintiff,

    v.

RENA BITTER et al.,

    Defendants.

Civil Action No. 23-2557 (JDB)

**MEMORANDUM OPINION & ORDER**

Plaintiff Afzalul Alam brings this action under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., to compel certain U.S. State Department officials (collectively, "State") to adjudicate his and his family's visa applications. Before the Court is State's motion to dismiss. For the reasons that follow, the Court will grant State's motion and dismiss plaintiff's claims.

**Background**

In February 2006, Alam—through his brother Monzur Khan—filed an I-130 petition with the United States Citizenship and Immigration Service ("USCIS").[1] Pet. for Writ of Mandamus & Compl. for Injunctive Relief [ECF No. 1] ("Compl.") ¶ 1.[2] In July 2010, USCIS approved his petition, which also lists Alam's wife, Shirin Afzal, and daughters as derivative beneficiaries. Id. ¶ 15. In April 2019, the National Visa Center ("NVC") sent Alam a Notice of Immigrant Visa Case Creation. Id. ¶ 17. In September 2021, NVC notified him that his case was "Documentarily Qualified," meaning that "all necessary documents had been submitted" and his family's visa

---

[1] An I-130 petition is a type of visa application used by U.S. citizens and lawful permanent residents to prove they have a familial relationship that makes their relative eligible to immigrate to the United States.

[2] Khan is a U.S. citizen; Alam is a citizen of Bangladesh. Compl. ¶¶ 1, 8.

1

applications were "pending to be scheduled for an interview." Id. ¶ 18. Alam has since received automated updates from NVC, but no one has contacted him to schedule an interview. Id. ¶ 20.

On September 1, 2023, Alam filed the present suit against three State Department officials: the Assistant Secretary of the Bureau of Consular Affairs, the Deputy Chief of Mission of the U.S. Embassy in Bangladesh, and the Secretary of State, all in their official capacities. Id. ¶¶ 9–11. He alleges that State's delay in adjudicating his and his family's visa applications is unreasonable. See id. ¶¶ 22–33. In support of his claim, Alam alleges that the delay has caused financial, psychological, and health-related harm to his family. Id. ¶ 5–6. Specifically, he claims that he is unable to invest in new business ventures and his daughters have been unable to advance their careers, his family suffers due to the absence of an in-person relationship with his brother, and his wife lacks the medical care she requires. Id. ¶¶ 6–7; Pl. Afzaful Alam's Opp'n to Defs.' Mot. to Dismiss [ECF No. 6] ("Opp'n) at 8. Alam also asserted breach of contract and tortious loss of consortium claims based on the delay. Compl. ¶¶ 34–37.

State moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss & Mem. in Supp. Thereof [ECF No. 5] ("Mot."). Alam filed an opposition, Opp'n, and State filed a reply, Defs.' Reply in Supp. of Mot. [ECF No. 8]. The motion is now ripe for decision.

**Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding such a motion, courts must "accept the [complaint's] factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ.,

45 F.4th 388, 395 (D.C. Cir. 2022).  But courts need not credit "legal conclusions couched as factual allegations."  Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam).

## Analysis

In his briefing, Alam abandons his claims for breach of contract and tortious loss of consortium.  Opp'n at 30.  Accordingly, the only claim remaining before the Court is Alam's unreasonable delay claim.  As to that claim, State advances two arguments in its motion to dismiss: (1) there is no clear agency duty to schedule any specific visa interview or to adjudicate any specific visa petition, and (2) the delay in this case is not unreasonable.  See Mot. at 6–23.  Like other judges in this district, the Court assumes, without deciding, that State has a mandatory legal duty to act on Alam's visa application.  See, e.g., Oduor v Blinken, Civ. A. No. 23-908 (DLF), 2024 WL 1406548, at *3 (D.D.C. Mar. 29, 2024).  But Alam's claim fails because he cannot show that State has unreasonably delayed acting on his application.

State argues that Alam failed to plausibly allege that the delay in adjudicating his visa application is unreasonable.  See Mot. at 14–23.  Because the "standard for undue delay under the Mandamus Act" is "identical to the APA standard," Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020), Alam's APA and Mandamus Act claims merge "for purposes of this inquiry," see Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 17 (D.D.C. 2022).  The central question is thus "whether the agency's delay is so egregious as to warrant mandamus." Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984).  This inquiry is guided by the six non-exclusive TRAC factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

3

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

As an initial matter, the Court disagrees with plaintiff's contention that "TRAC is inappropriate at the Motion to Dismiss stage." Opp'n at 21. "There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular [c]omplaint." Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023). If the complaint's allegations and materials properly considered at the motion-to-dismiss stage contain enough facts to evaluate the TRAC factors, "then a [c]ourt may appropriately decide to do just that." Id. The Court does so here.

Factor One: The first TRAC factor—the "most important" factor in this analysis—weighs strongly in State's favor. See Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3–4 (D.D.C. May 17, 2022) (quoting Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021)). In considering this factor, courts ask whether the time agencies take to make a decision is governed by a "rule of reason." Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting TRAC, 750 F.2d at 80). The government's process for scheduling family-sponsored visa interviews uses a rule of reason. Section 203(e) of the Immigration and Nationality Act ("the INA") provides that family-sponsored visas "shall be issued to eligible

4

immigrants in the order in which a petition [on] behalf of each such immigrant is filed." 8 U.S.C. § 1153(e)(1). Section 203(a) of the INA prescribes preference classes for family-sponsored visas: brothers and sisters of adult U.S. citizens, such as Alam, fall into the lowest priority category ("F4"). Id. § 1153(a)(4). Each month, the Department of State releases a Visa Bulletin that summarizes the availability of immigrant visas based in part on the date the visa petition was initially filed. See, e.g., Visa Bulletin Immigrant Numbers for May 2019, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/dam/visas/Bulletins/visabulletin_ may2019.pdf (last visited July 22, 2024). NVC schedules consular interviews based on a first-in, first-out method when an applicant's case is "documentarily complete" and has a current priority date. See Immigrant Visas, U.S. Embassy in Bangladesh, https://bd.usembassy.gov/immigrant-visas/ (last visited June 24, 2024); Immigrant Visa Process, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-8-scan-collected-documents/step-9-upload-and-submit-scanned-documents.html (last visited June 24, 2024). This approach of processing visas "in the order in which those petitions were received . . . makes sense." Da Costa, 80 F.4th at 341.

Alam's visa has followed this reasonable process. Alam's brother filed the visa petition at issue in February 2006, Compl. ¶ 1, but because Alam was waiting in a first-in, first-out queue for F4 visas, his visa application was not eligible for administrative processing until April 2019, when NVC sent him a Notice of Immigrant Visa Case Creation. Id. ¶ 17. And Alam's case was not deemed documentarily complete until September 2021, which is when he became qualified to be scheduled for an interview. Id. ¶ 18. Accordingly, Alam has thus far faced a delay of two years and ten months. See Opp'n at 18 (conceding the delay at the time of the complaint was 26 months). While there is no bright-line rule, "[d]istrict courts have generally found that immigration delays

5

in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." Meyou, 2022 WL 1556344, at *3 (internal quotation marks omitted). Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." Tekle v. Blinken, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022). Because the delay of Alam's administrative processing falls within the two-to-three-year period, and State uses a rule of reason to schedule visa interviews, the first factor strongly favors State.

Factor Four: The fourth factor—the effect on competing agency priorities—also strongly favors State. Alam claims that he is not asking this Court to move his case ahead of other pending cases, but rather asks "that the Defendants complete adjudication of the visa and issue a final adjudication within a reasonable time," which "would [not] in any specific way hinder or harm either consular operations or other applicants." Opp'n at 29. But "[a]s many courts have recognized, ordering an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped." Meyou, 2022 WL 1556344, at *4. At bottom, these are generally "resource-allocation decisions that do not lend themselves to judicial reorderings of agency priorities." Khazaei v. Blinken, Civ. A. No. 23-1419 (JEB), 2023 WL 6065095, at *7 (D.D.C. Sept. 18, 2023) (internal quotation marks omitted).

Factor Six: The sixth factor—any impropriety on the agency's part—is neutral, as Alam has not alleged that State acted in bad faith. Meyou, 2022 WL 1556344, at *5.

Factors Two, Three, and Five: The second, third, and fifth factors weigh slightly in Alam's favor. The second factor asks whether Congress set a statutory "timetable or other indication of the speed with which it expects the agency to proceed." TRAC, 750 F.2d at 80. There is no

statutory deadline to complete processing or adjudication of visa applications, Meyou, 2022 WL 1556344, at *3, but lawmakers have expressed, in a 2000 bill amending the INA, "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202, Oct. 17, 2000, 114 Stat. 1262, 1262 (codified at 8 U.S.C. § 1571(b)).  The D.C. Circuit has concluded that this "aspirational statement . . . somewhat favors" plaintiffs who have waited longer than 180 days for an immigration benefit.  Da Costa, 80 F.4th at 344.

The third and fifth factors relate to the harm plaintiffs suffer from waiting and are commonly considered together.  Krihely v. Mayorkas, Civ. A. No. 22-2973 (RC), 2023 WL 6215360, at *6 (D.D.C. Sept. 25, 2023).  The third factor counsels that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake."  TRAC, 750 F.2d at 80.  The fifth factor is a "broader version of the same idea," Da Costa, 80 F.4th at 344, and directs courts to consider "the nature and extent of the interests prejudiced by delay," TRAC, 750 F.2d at 80.  Here, Alam alleges three separate harms: economical, psychological, and health related.  As to the economic harm, Alam alleges that he has been unable to invest in new business ventures and has lost job opportunities, and that his daughters are unable to pursue higher education and advance their careers.  Compl. ¶¶ 6–7.  He further alleges psychological harms due to his family's inability to be with his brother in the United States.  Opp'n at 8.  Finally, Alam alleges that his wife, who has diabetes, heart issues, and mental health ailments, faces medical harm because she does not have access to the "superior health care available in the United States."  Id. at 9.

Judges in this district give less weight to economic harms when considering the harms that plaintiffs have suffered under the third and fifth TRAC factors. See, e.g., Krihely, 2023 WL 6215360, at *6. The Court acknowledges that Alam alleges more than "economic" harm, and gives more weight to Alam's wife's health concerns, as well as the family's prolonged separation from Alam's brother. See id. at *6–7. But these factors only tilt the scale somewhat in plaintiff's favor. Cf. Mahmood v. U.S. Dep't of Homeland Sec., Civ. A. No. 21-1262 (RC), 2021 WL 5998385, at *8 (stating that plaintiff's medical ailments, which included hypertension and mental health issues, tilted the factors "somewhat" in plaintiff's favor but did not outweigh the factors in favor of the government). Nor do these factors, taken as a whole, outweigh the other factors that weigh strongly in State's favor. See Dastagir, 557 F. Supp. 3d at 168 (concluding that even if factors three and five did weigh in favor of plaintiff, they would be overcome by factors one and four in favor of the government).

## Conclusion

Considering all six TRAC factors together, the Court concludes that Alam has failed to plausibly state an unreasonable delay claim. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting [State's] motion," and the remaining factors "are not strong enough to justify the opposite conclusion." Meyou, 2022 WL 1556344, at *5. Accordingly, the Court will grant State's motion.

*     *     *

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [5] defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: July 23, 2024